UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JOSEPH C.,                                                                    Case No. 6:23-cv-00379-AR

                Plaintiff,                                                  OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____

**ARMISTEAD, Magistrate Judge**

       In this judicial review of the Commissioner's final decision denying Social Security

benefits, plaintiff Joseph C. (his last name omitted for privacy) challenges the Administrative

Law Judge's evaluation by failing to identify specific, clear and convincing reasons for

discounting his subjective symptom testimony, improperly finding the medical opinion of Dr.

Peter Leavitt, M.D., unpersuasive, improperly addressing the lay witness testimony, and by

failing to make a vocational finding at step five supported by substantial evidence. Because the

Page  1  – OPINION AND ORDER

court finds the Commissioner erred, the Commissioner's decision is REVERSED and

REMANDED for an immediate award of benefits.[1]

## ALJ'S DECISION

Plaintiff applied for Title II Disability Insurance Benefits (DIB) on October 11, 2017,

alleging disability beginning on March 1, 2017. (Tr. 168.) His claim was initially denied on

January 29, 2018, and again upon reconsideration on March 26, 2018. (Tr. 81, 98.) Afterwards,

plaintiff filed for a hearing that was held before the ALJ on July 19, 2019. (Tr. 29.) The ALJ

issued a decision finding plaintiff not disabled on August 5, 2019. (Tr. 23.) Plaintiff appealed the

decision and, upon stipulation of the parties, plaintiff was granted a new hearing, held on

December 13, 2022. (Tr. 1734, 1788.)

In denying plaintiff's application for DIB, the ALJ followed the five-step sequential

evaluation process.[2]  At step one, the ALJ determined that plaintiff has not engaged in substantial

gainful activity since March 1, 2017, the alleged onset date. (Tr. 1716.) At step two, the ALJ

determined that he had the following severe impairments: fibromyalgia, migraines, history of

lumbar spinal disc bulge, mild degenerative disc disease of the cervical spine, anxiety, and

---

[1]     This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have
consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28
U.S.C. § 636(c).

[2]     To determine if a claimant is disabled within the meaning of the Social Security Act, the
ALJ must apply a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4),
416.920(a)(4). The process ends when the ALJ can determine that the claimant is or is not
disabled. The burden of proof is on the claimant at steps one through four, and on the agency at
step five. *Ford v. Saul*, 950 F.3d 1141, 1148-49 (9th Cir. 2020); *see also Woods v. Kijakazi*, 32
F.4th 785, 788 n.1 (9th Cir. 2022) (summarizing the steps and noting that "[t]he recent [2017]
changes to the Social Security regulations did not affect the familiar 'five-step sequential
evaluation process'").

depression. (Tr. 1716.) At step three, the ALJ determined that his impairments singly or in

combination did not meet or medically equal the severity of any listed impairment. (Tr. 1716.)

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. §

404.1545, the ALJ determined that plaintiff has the RFC to perform sedentary work with the

following limitations: occasionally climb, stoop, kneel, and crawl; sit for 30 minutes then stand

for 30 minutes throughout an eight-hour workday while staying on task; understand, remember,

carry out, and persist at simple, routine, repetitive tasks; make simple work-related decisions;

perform work with few if any changes in the workplace; and no assembly line work. (Tr. 1718.)

At step four, the ALJ determined that plaintiff cannot perform his past relevant work as a

security officer. (Tr. 1725.) With RFC in hand, the ALJ found at step five that jobs exist in

significant numbers in the national economy that plaintiff can perform, including such

representative occupations as document sorter, taper, and wafer breaker. (Tr. 1726.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is

"more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation

and citation omitted). To determine whether substantial evidence exists, the court must weigh all

the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v.*

*Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

### A.    *Plaintiff's Subjective Symptom Testimony*

Determining the credibility of a claimant's testimony regarding subjective reports of pain or symptoms requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). In the first stage, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015.

Plaintiff contends that he cannot engage in full-time, competitive employment based on a combination of his impairments, including fibromyalgia, severe tension headaches and migraines, depression, and anxiety. Plaintiff reports that pain interferes with his sleep, he has no trouble caring for himself, and does not need reminders for medicine. (Tr. 210.) Plaintiff also reports focus issues, such as only being able to pay attention for 30 minutes at a time, an inability to finish what he starts, and being able to follow short and simple instructions. (Tr. 212.)

At his first hearing, plaintiff stated that he had stopped working as a security officer in 2015 because his condition had worsened and his employer was no longer able to accommodate work restrictions. (Tr. 36-37.) He explained that he was showing up to work with a headache or

began developing one early into his shift starting. (Tr. 37.) For his migraines, he takes

propranolol daily, and sumatriptan as needed. (Tr. 39-40.) When he experiences "extreme pain,"

he takes hydrocodone. (Tr. 40.) He reiterated that he can perform self-care, that he generally

experiences some level of pain when he wakes, and that he takes a break after showering. (Tr.

40-41.) He testified that he experiences bad days about half the month due to fibromyalgia,

migraines, or both, and that on good days he does small household chores with breaks to recline

or lie down. (Tr. 41.) He does not perform yard work. (Tr. 51.)

When asked specifically about his headaches, plaintiff said that he has headaches five to

six days a week, and that they make it difficult for him to focus and concentrate. (Tr. 52.) He

further stated that he experiences migraines one to three times a month, they last all day, and he

is typically bedridden. (Tr. 53.) Plaintiff described that pain affects his sleep and that he does not

wake feeling rested, that his medications increase his tiredness and drowsiness, and that his

depression and anxiety have caused him to withdraw socially. (Tr. 52-57.) He also explained that

he stopped therapy for his depression and anxiety due to insurance issues. (Tr. 57-58.) At

plaintiff's second hearing, he stated that his condition had not changed. (Tr. 1744.)

The ALJ discounted plaintiff's subjective symptom testimony because: (1) his testimony

was inconsistent with the medical evidence; (2) his activities of daily living were inconsistent

with his allegations; and (3) his testimony about the frequency and intensity of his migraines was

inconsistent with his reports to his medical providers. Plaintiff challenges the ALJ's assessment

on two grounds: (1) that the ALJ erred in discounting his pain testimony about his fibromyalgia

and migraines because it varies in intensity and frequency and that his migraine medication does

not prevent them from occurring, and (2) that plaintiff's activities of daily living do not contradict his testimony.

### 1. Migraines

An ALJ may discount a claimant's testimony based on prior inconsistent statements about their symptoms. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014.) A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006).

In the decision, the ALJ found that plaintiff's allegations of frequent migraines are inconsistent with his reports to his medical providers. The ALJ noted that in September 2017, plaintiff informed a provider that he experienced headaches four to six days per week, (8F/31); in January 2018, he had a couple of headaches at 7/10 (Tr. 1549); and in April 2018, that he had chronic daily headaches, migraines one to two times per month, and was having "good relief with sumatriptan" (Tr. 1721-22, citing Tr. 1650, 1653.) (Ex. 11F/1.) Despite that the sumatriptan was working well, the ALJ stated that plaintiff took it "sparingly." The ALJ described that plaintiff later reported having migraines two to three times per month that were sometimes relieved with one dose of sumatriptan, but occasionally, he needed a second dose. (Tr. 1722, citing 1653.) Based on those reports, the ALJ concluded that plaintiff experienced improved migraine control with medications and discounted his testimony. (Tr. 1721-22.)

Plaintiff argues that the ALJ erred in finding his reports to his medical providers inconsistent with his hearing testimony. According to plaintiff, his reports to his providers varied

slightly because it is not unusual for his migraines to vary in their frequency or intensity.

Plaintiff maintains that he testified at the hearing that his has migraines occur one to three times

per month, and that once a migraine begins, he is usually bedridden for the day, which is

consistent with his reports to his providers. (Tr. 53.) The medication helps with reducing

symptoms after onset, plaintiff contends, but the medication does not prevent them from

occurring. (Tr. 39-40, 52.) The court agrees with plaintiff's arguments.

Contrary to the ALJ's finding, plaintiff's reports to his providers about the frequency of

his headaches and migraines is consistent with his medical record and with his hearing

testimony. Plaintiff's medical records reflect that he has reported migraines one to three times

per month, and that he has frequent headaches. (Tr. 1575, 1577, 1586, 1650, 1653.) Plaintiff

consistently reports severe pain with his migraines. (Tr. 1549 (7/10), 1555 (8/10).) As plaintiff

argues, his records reflect that he takes propranolol for headache prevention, and that it has

helped reduce the frequency and intensity of his headaches, but he still experiences migraines.

(Tr. 1577-78, 1582 (noting that propranolol has alleviated the "black spots" and "aura" with his

migraines.) Although plaintiff has reported that he gets good relief with sumatriptan, contrary to

the ALJ's suggestion, this improvement does not undermine plaintiff's testimony that he

continues to experience migraines one to three times per month. (Tr. 1650, 1653.)

In short, none of the records identified by the ALJ contradicts plaintiff's testimony about

the intensity or frequency of his migraines. Therefore, the ALJ's findings are not supported by

substantial evidence, and on this record, fails to provide a clear and convincing reason to

discount plaintiff's testimony about his migraines.

###### 2.       Daily Activities

An ALJ may rely on daily living activities as a basis for discounting subjective symptoms if the claimant's activities contradict her testimony or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is enough that the claimant's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Claimants do not, however, need to be utterly incapacitated to receive disability benefits, and an ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)).

The ALJ discounted plaintiff's subjective symptom testimony because he could perform small chores, engage in photography as he was able, take care of his three dogs, and lift a 60-pound bag of dog food, an action that resulted in injury. (Tr. 1722-23.) Plaintiff argues that those activities neither contradict his testimony nor take up a substantial part of his day. (Pl.'s Br. at 13, ECF 6.) Plaintiff is correct.

The ALJ considered plaintiff's testimony that he helps take care of his pets, which involved letting the dogs in and out of the house and feeding them on his good days, but that his wife walks them and generally handles most duties. (Tr. 208.) Further, engaging in photography does not undermine any portion of plaintiff's testimony because there is no description of what plaintiff's photography entails, for how long it is performed, and includes the caveat that he only does so "as he is able." (Tr. 1561.) As for lifting a 60-pound bag of dog food, this was a singular

incident that resulted in injury and is not typical behavior. (Tr. 54-55, 1831.) When it comes to chores, plaintiff testified that he only performs light chores on his good days and that he must take long breaks in between activities. (Tr. 41.)

Additionally, the ALJ did not find that plaintiff spent a "substantial" portion of his day engaged in household chores or that these activities are transferrable to a work environment. *Ghanim*, 763 F.3d at 1165; *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). Because the ALJ did not connect those activities to any symptom or the degree of any symptom alleged by plaintiff, she failed to provide a specific, clear and convincing basis upon which to discount his subjective symptom testimony. *Garrison*, 759 F.3d at 1016 ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."); *Felicia F. P. v. Comm'r Soc. Sec. Admin.*, Case No. 3:21-cv-00889-AR, 2023 WL 1991530, at *3 (D. Or. Feb. 14, 2023) (concluding that claimant's ability to perform basic household chores was not inconsistent with allegations and was not clear and convincing reason to discount subjective symptom testimony).

The court is unpersuaded by the Commissioner's argument that ALJ drew reasonable inferences from the evidence concerning plaintiff's migraines and daily activities. According to the Commissioner, the ALJ could reasonably infer that plaintiff's migraines were well controlled

because he did not report to his providers that he was bedridden.[3]  (Def's Br. at 15-16.) That

*post-hoc* rationalization was not advanced by the ALJ and does not contradict that plaintiff

consistently reported having migraines at least one to three times per month, despite his good

response to sumatriptan and propranolol. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.

2003) ("We are constrained to review the reasons the ALJ asserts.").

      The Commissioner also contends that the ALJ could reasonably infer that plaintiff's

migraines were not as limiting as alleged based on his activities. As discussed above, the ALJ's

findings about plaintiff's daily activities are not supported by substantial evidence, and therefore,

the Commissioner's rationale likewise fails to provide clear and convincing basis for discounting

plaintiff's testimony. The ALJ did not identify a single activity performed by plaintiff that

exceeded his allegations. In sum, the ALJ erred in rejecting plaintiff's subjective symptom

testimony based on the frequency and intensity of his migraines and his activities of daily living.[4]

---

[3]     The Commissioner also argues that plaintiff did not report difficulty concentrating due to
his headaches to his providers, as evidenced by his normal mental status examinations. It is
unclear to the court what reasonable inference the ALJ could have drawn from plaintiff's normal
mental status examinations (*i.e.*, being oriented to person, place, and time) as the Commissioner
contends. (Def.'s Br. at 15.) Plaintiff's mental status exams reflect several instances where he
reported decreased concentration ability. (Tr. 1561, 1564, 1575.) Whether those reports were
attributable to his migraines or his fibromyalgia makes no difference, as it is not clear that the
ALJ relied on his mental status exams to discount that testimony. The Commissioner's point is
not well-taken because the ALJ determined that some limitations with plaintiff's concentration
were acceptable and that plaintiff's primary barrier to full-time work was his widespread pain.
(Tr. 1722.)

[4]     The court is not persuaded by the Commissioner's argument that the ALJ appropriately
discounted plaintiff's testimony for providing inconsistent reasons for declining mental health
treatment. (Def.'s Br. at 15.) The ALJ found plaintiff's statement that he declined therapy
because of insurance issues was inconsistent with a report that he did not want therapy or
medications. (Tr. 1722.) Continuing, the ALJ also found that plaintiff's primary limitation is
"widespread pain," and that it would be reasonable to "assume that pain, depression, anxiety, and

Inconsistency with medical evidence may provide a clear and convincing reasons to

discount a claimant's testimony, so long as it is not the only reason. *Trevizo*, 871 F.3d at 679.

Because the ALJ has failed to provide other clear and convincing reasons sufficient to discount

plaintiff's subjective symptom testimony about his limitations, a lack of objective medical

evidence cannot supply the sole basis for discounting his testimony. *Burch v. Barnhart*, 400 F.3d

676, 680 (9th Cir. 2005); *see also Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017)

(expressing that the lack of objective medical evidence is "perfectly consistent with debilitating

fibromyalgia," because it is diagnosed based on a claimant's reports of pain and other

symptoms).[5]

   In short, because the ALJ's findings concerning plaintiff's migraines and activities of

daily living are not supported by substantial evidence, and the ALJ may not rely on the

inconsistency with the objective medical evidence as the sole basis, the ALJ has failed to provide

---

side effects from medication would cause some moderate limits in understanding, remembering, carrying out, and persisting at tasks." (*Id.*, citing 1653.) The treatment note cited by the ALJ reflects that plaintiff's mental health was stable, that his depression and anxiety were mostly attributable to his pain, and that he had tried some medications previously and did not like them, and that he declined further medication management for his mental health treatment at the time. (Tr. 1653.) Viewing the ALJ's statement in context, it is not clear that the ALJ discounted plaintiff's testimony about his mental health. To the extent that this note could be viewed as contradictory, the court concludes that singular inconsistency is not a clear and convincing reason to discount his testimony. *See Felicia F. P.*, 2023 WL 1991530, at *5 (concluding that ALJ's partially supported rationale was not clear and convincing support for adverse determination).

[5]    The ALJ appeared to exclude fibromyalgia as a cause of plaintiff's widespread pain, despite noting that he was treated for the condition, has a longstanding diagnosis of fibromyalgia, and acknowledging that on exam, had 18/18 positive tender points. (Tr. 1721.) Contrary to the ALJ's finding, Dr. Leavitt noted that other disorders had been ruled out as a source of his pain in 2013, and Katrina Cypcar, PA-C., also conducted testing to rule out other rheumatological and autoimmune disorders before diagnosing fibromyalgia. (Tr. 1563, 1633, 1637.)

specific, clear and convincing reasons to support the adverse determination. Accordingly, the ALJ has erred.

**B.    *Dr. Leavitt's Medical Opinion***

For disability claims filed on or after March 27, 2017, new regulations for evaluation medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, an ALJ evaluates the supportability and consistency of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 404.1520c. The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). Supportability is determined by assessing whether the medical source provides explanations and objective medical evidence to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by evaluating how consistent the opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(2). Under the new framework, the ALJ is no longer required to "provide specific and legitimate reasons for rejecting an examining doctor's opinion;" rather, the ALJ's reasons must "simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

Plaintiff challenges the ALJ's evaluation of Dr. Leavitt's opinion, his primary care physician. In a September 27, 2017 opinion, Dr. Leavitt opined that plaintiff would miss four days of work per month, could sit for at least six hours, could stand and walk for less than two hours, would need to alternate positions every 20 minutes, would need unscheduled 20 minute breaks every 30 minutes with the opportunity to lie down, could occasionally lift up to ten

pounds, rarely lift up to 50 pounds, occasionally stoop, bend, crouch, crawl, kneel, climb ladders

and stairs, reach in front and overhead with his arms 50 percent of an eight-hour workday, can

tolerate low stress work, and has difficulties with following simple instructions, distractibility,

routine problem solving, and "fuzzy" thinking that would have him off-task 25 percent or more

during an eight-hour workday. (Tr. 1569-72.)

The ALJ found Dr. Leavitt's opinion unpersuasive. The ALJ noted that although Dr.

Leavitt stated that plaintiff had been seen in the "office" since 2013, Dr. Leavitt did not begin

treating plaintiff until 2015, and saw plaintiff on only eight occasions as of the date of his

opinion. Because Dr. Leavitt is a primary care physician, not a specialist in fibromyalgia,

migraines, or pain management, the ALJ discounted his opinion. The ALJ further found Dr.

Leavitt's opinion unsupported by his own treatment records, noting that plaintiff reported

baseline pain at 2-3/10 and periodic pain spikes at 7-8/10. The ALJ found those reports of pain

inconsistent with plaintiff's sparing use of prescribed hydrocodone pain medication and Dr.

Leavitt's assessed limitations inconsistent with the benign exam findings of normal muscle bulk

and tone, "which I consider inconsistent with the broadly sedentary lifestyle." Finally, the ALJ

concluded that Dr. Leavitt's 2017 opinion was undermined by a second opinion he offered in

2019, in which he stated that he could not complete the form because he could not determine if

plaintiff is "unable to work entirely" and was not qualified to complete a functional capacity

assessment. The ALJ concluded the assessment of Dr. Leavitt's opinion this way: "Dr. Leavitt's

limited treatment of the claimant in 2017, and later statement that he is not qualified to offer a

functional capacity assessment, both undermine his stated opinion from September 27, 2017."

(Tr. 1724.)

As plaintiff correctly argues – and the Commissioner acknowledges – the 2019 opinion

was authored by McKenzie Dean, D.O., *not* Dr. Leavitt. The ALJ's erroneous attribution of the

2019 opinion to Dr. Leavitt is not supported by substantial evidence. The Commissioner argues

that despite that error, the ALJ's remaining reasons for discounting the 2017 opinion are

adequate and supported by substantial evidence and consequently, any error is harmless. Not so.

None of the ALJ's remaining reasons are supported by substantial evidence or amount to

a reasonable interpretation of the record. As plaintiff contends, his waxing and waning pain and

normal muscle tone, bulk, and strength, are typical of fibromyalgia. *See Revels*, 874 F.3d at 664

(concluding that ALJ erred in rejecting physician's opinion based on a lack of objective findings

"demonstrate[d] a fundamental lack of knowledge of fibromyalgia"). Additionally, the "tender-

point examinations themselves constitute 'objective medical evidence of fibromyalgia.'" *Id.*

(citing SSR 12-2p, at *2-3); *see also Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)

(discussing that fibromyalgia is diagnosed based on subjective reports of pain and that there is no

laboratory test to confirm the diagnosis). Dr. Leavitt's examination findings showed some tender

points on January 4, 2017 (Tr. 1583), many positive tender points on September 13, 2017 (Tr.

1578), and 13/18 positive tender points on September 27, 2017 (Tr. 1564, 1568). Thus, the ALJ's

finding that Dr. Leavitt's opinion was not supported by his own examination findings is not

supported by substantial evidence.[6]

The ALJ also erred by rejecting Dr. Leavitt's opinion because Leavitt was a primary care

---

[6]    The court notes that Dr. Leavitt's findings are consistent with those of Katrina Cypcar,
PA-C, who examined plaintiff on September 10, 2018, for chronic pain, headaches, depression,
and anxiety. (Tr. 1634.) Cypcar's exam showed that plaintiff was "significantly symptomatic"
with 18/18 tender points. (Tr. 1637.) After laboratory results to screen for other rheumatological
and autoimmune disorders were normal, she also diagnosed fibromyalgia. (Tr. 1633, 1637.)

physician and not a specialist in fibromyalgia, migraines, or pain. As Dr. Leavitt attested in his

opinion, plaintiff was diagnosed with fibromyalgia in 2013. (Tr. 1563, 1568.) Those records

show that after inconclusive testing by Hans Carlson, M.D. in February 2013, plaintiff was

referred to David Sibell, M.D., at the OHSU Comprehensive Pain Clinic. (Tr. 1459.) At an April

2013 evaluation, Dr. Sibell found plaintiff had 14/18 positive tender points, and 0 positive

control points. (Tr. 1463.) After reviewing plaintiff's history, radiology reports, other physician's

reports, and plaintiff's medical records, Dr. Sibell stated that plaintiff met the diagnostic criteria

for fibromyalgia. (Tr. 1465-66.) Dr. Sibell advised further treatment by a primary care physician.

Having been diagnosed formally with fibromyalgia years earlier by a specialist, and being

advised to continue care with a primary care physician, the court finds the ALJ's reasoning here

unreasonable and unsupported by substantial evidence. The ALJ's reasoning here also is

questionable given that the ALJ found the agency reviewing physicians' opinions persuasive,[7]

despite that none of them appear to be specialists. *See Rhiannon P. v. Comm'r Soc. Sec. Admin.*,

Case no. 6:21-cv-1039-MC, 2023 WL 2187552, at *6 (D Or. Feb. 23, 2023) (discounting

claimant's physician's opinion because he was not a specialist was error; noting "the state-

agency reviewing physicians that offered opinions about [claimant's] ability to work are also not

'specialists,' but the ALJ found those opinions more persuasive") (footnote omitted).

The court also rejects the Commissioner's argument that the ALJ appropriately

discounted Dr. Leavitt's assessment of extreme limitations as unsupported because plaintiff's

reports of pain were inconsistent with his "sparing" use of hydrocodone and pain medications.

---

[7]     The ALJ found the opinions of Neal E. Berner, M.D., Thomas W. Davenport, M.D., Ben
G. Kessler, Psy. D., and Irmgard E. Friedburg, Ph. D. persuasive. (Tr. 1723.)

Page  15  – OPINION AND ORDER

The record shows that opioids are contraindicated for fibromyalgia. Importantly, Dr. Sibell

advised plaintiff of the following:

> Generally, opioids have not been shown to be effective in the treatment of
> fibromyalgia. Opioid-induced hyperalgesia may actively exacerbate fibromyalgia
> symptoms. Therefore, I do not recommend their use in the treatment of primarily
> fibromyalgia pain.

(Tr. 1466.) Although Dr. Sibell's diagnosis and records pre-date plaintiff's alleged disability

onset date of March 1, 2017, they are helpful in explaining (1) that plaintiff was diagnosed with

fibromyalgia by a pain specialist; and (2) that using opioid and narcotic pain medication may

worsen his fibromyalgia pain. Based on Dr. Sibell's recommendation, it was entirely reasonable

for plaintiff to limit his prescription pain medication. *See Carmickle v. Comm'r Soc. Sec. Admin.*,

533 F.3d 1155, 1162 (9th Cir. 2008) (expressing that conservative treatment of debilitating pain

is "not a proper basis for rejecting the claimant's credibility where the claimant has a good

reason for not seeking more aggressive treatment"). Viewing the record in totality, the ALJ's

rejection of plaintiff's pain testimony because he used prescription pain medication sparingly,

whether related to his widespread pain or migraines, is not supported by substantial evidence.

Finally, the ALJ's determination that Dr. Leavitt's opinion was unpersuasive because he

met with plaintiff "only eight times" is not a rational interpretation here.[8] The ALJ found the

---

[8]    The Commissioner argues that not all of Dr. Leavitt's assessments in the fibromyalgia
medical assessment form are "medical opinions," citing 20 C.F.R. § 404.1520b(c). (Def.'s Br. at
5.) According to the Commissioner, Dr. Leavitt's assessment that plaintiff would be off-task 25
percent of the time due to his impairments and would be absent from work four days per month
does not qualify as a "medical opinion" under the new regulations relating to medical evidence
evaluation. (Def.'s Br. at 5 & n.4.) The Commissioner's argument is undeveloped. The
Commissioner cites no case law supporting or applying its interpretation in similar
circumstances. Moreover, the ALJ treated Dr. Leavitt's assessment as a medical opinion in the
decision, and the Commissioner agrees that other portions of Dr. Leavitt's fibromyalgia

reviewing agency physicians' opinions persuasive, yet the agency physicians never met plaintiff. *Rhiannon P.*, 2023 WL 2187552, at \*6.

In summary, the ALJ's reasons for finding Dr. Leavitt's opinion unpersuasive are not supported by substantial evidence, are not a reasonable interpretation of the record, and therefore, the ALJ has erred. Because the ALJ's errors in assessing plaintiff's subjective symptom testimony and Dr. Leavitt's opinion are dispositive, the court declines to address plaintiff's remaining arguments.

## C.   *Remedy*

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Trevizo*, 871 F.3d at 682. The issue turns on the utility of further proceedings. *Garrison*, 759 F.3d at 1019, 1021. Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed if "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates

---

assessment are, in fact, medical opinions. (Def.'s Br. at 8 (discussing plaintiff's sitting, standing, walking, postural, environmental limitations and rest break needs); Tr. 1724.) Plaintiff's reply likewise cites no case law and does not grapple with the Commissioner's arguments about the medical opinion definition in the new regulations in depth. (Reply at 3.) Because the Commissioner's argument is not dispositive on this record, the court does not address it.

serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021. The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

All the credit-as-true criteria are satisfied here. The ALJ erred in evaluating plaintiff's symptom testimony and improperly evaluated Dr. Leavitt's opinion. The record is fully developed and there are no outstanding issues to resolve. Plaintiff testified that he experiences migraines one to three times per month that last all day and leave him essentially bedridden. Dr. Leavitt opined that plaintiff would need unscheduled breaks every 30 minutes with the opportunity to lie down during those breaks. The vocational expert testified that missing more than 16 hours of work per month, or the equivalent of two days, and that taking extra unscheduled breaks to lie down during the day would eliminate competitive employment. (Tr. 1748-49.) Furthermore, the court's review of the record creates no serious doubt that plaintiff is, in fact, disabled. Accordingly, the court exercises its discretion to remand this case for an immediate award of benefits.

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's final decision and REMANDS this case for an immediate calculation and award of benefits.

ORDERED on May 29, 2024.

_____
JEFF ARMISTEAD
United States Magistrate Judge